IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

United States Courts
Southern District of Texas
FILED

MAR - 7 2006

Michael N. Milby, Clerk

| | | |
|---|---|---|
| TRENDSETTER INVESTORS, LLC | § § § § | H 06 -0746 |
| Plaintiff, | | |
| v. | | C.A. NO. _____ |
| HYPERDYNAMICS CORPORATION, TRENDSETTER PRODUCTION CO., KENT WATTS, MICHAEL WATTS, CHRISTOPHER WATTS AND HARRY BRIERS | § § § § § § § § § | Jury |
| Defendants. | | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Trendsetter Investors, LLC ("Trendsetter Investors" or "Plaintiff") files its Original Complaint against Hyperdynamics Corporation ("Hyperdynamics" or the "Company"), Trendsetter Production Company, Kent Watts, Michael Watts, Christopher Watts and Harry Briers (collectively, "Defendants") as follows:

1. This action complains of a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of working interest units in Louisiana oil and gas leases offered by Trendsetter Production Company ("Trendsetter Production"). The Defendants disseminated false and misleading information to artificially inflate the value of oil and gas property interests in Louisiana. This fraudulent scheme enabled the Defendants to maintain their interests in Hyperdynamics Corporation stock and provided income to Defendants to pursue interests in other properties.

2. Hyperdynamics is a Houston-based, publicly-traded oil and gas company focused on oil and gas exploration and production. Trendsetter Production Company is a subsidiary of Hyperdynamics operating oil and gas leases in Louisiana. Hyperdynamics' other assets include a

major oil and gas concession offshore Guinea, West Africa. Hyperdynamics has consistently incurred negative cash flow from operations from inception and has frequently sold stock or borrowed money in order to pay for its operations. Hyperdynamics was low on cash again in late 2004, and it announced it was pursuing domestic production in Louisiana to provide income to pay for overhead and move forward with future operations in Guinea. Such domestic production included eleven new oil and gas leases in Louisiana located in what Defendants represented to be "proven reserve areas" that Hyperdynamics acquired. Hyperdynamics projected steadily increasing revenues from domestic production in the coming months. In January 2005, Hyperdynamics announced it had "initiated a reserve study" on the Louisiana leases, and represented that initial results were promising. Kent Watts, the CEO of Hyperdynamics, stated that the initial reported reserves represented over $2.5 million in future gross revenue and anticipated that a budgeted production rate of 400 barrels per day could be achieved by the end of the fiscal year.

3.  However, income from the Louisiana properties did not come soon enough, and Hyperdynamics needed more money in February 2005. Instead of obtaining income through an offering of Hyperdynamics' stock, the Defendants embarked on a fraudulent scheme to inflate the value of its Louisiana assets to lure investors into providing the needed income. To effectuate their scheme, Defendants proposed a working interest offering to sell up to 49% of the interest in one of Trendsetter Production's leases in Louisiana, specifically the Norris Field. This property was promoted as a "proven field," one that had produced in the past at deeper levels. Nine wells had already been drilled at shallow depths, and the Company pledged to drill 14 total wells, each producing a predicted 10-15 barrels a day. The working interest was sold as investment units, with each unit costing $55,000 and representing 1% of the Norris Field.

4.　Defendants had knowledge at the time of the offering that the interests in the Norris Field were worth nowhere near the asking price, but continued to misrepresent the field's value to investors. Previous production history from the field at shallow depths showed only very limited recovery. Defendants knew the Company's projections for the Norris Field were false and misleading, as the projections were at least seven times larger than the historical levels of production for the field. Defendants further inflated the value of the Louisiana properties and misled investors in a March 11, 2005 press release which estimated a total of 1,470,000 barrels in place based upon an "independent geological study." Over the next several months, the Defendants continued to disseminate false and misleading positive statements, described more fully below in ¶¶ 19-31, regarding the Louisiana properties in order to inflate the value of the Louisiana properties and defraud investors.

5.　This fraudulent scheme enabled the Defendants to avoid dilution of stock that would have occurred in a stock offering and that would have diminished the Defendants' return on the Guinea prospect. On information and belief, Defendants used the income from their fraudulent scheme with regard to the sale of investment units to remain solvent long enough to pursue Hyperdynamics' interests in Guinea.

6.　Plaintiff Trendsetter Investors, LLC was formed by a group of investors in March of 2005 for the sole purpose of the ownership of several of the investment units offered by Trendsetter Production Company. Over a period of several months from March 2005 to October 2005, Trendsetter Investors purchased a total of 30 units in reliance on the Defendants' continued positive statements regarding the Louisiana properties.

7.　However, the positive statements Defendants made regarding the Louisiana properties were each materially false and misleading when made, and failed to disclose the

following adverse information, disclosure of which was necessary to make the statements not false and misleading, and which adverse facts were then known only to Defendants due to their access to Hyperdynamics and Trendsetter Production internal corporate data:

(a) At the time of the offering, Defendants knew production estimates were false and misleading. Hyperdynamics projected that wells on the property would produce 10-15 barrels a day, while historical production data for the field show an average of only 1-2 barrels a day.

(b) The Defendants knew that the representation to Plaintiff that there were 1,470,000 barrels in place was false and misleading, as the estimate involved over 200 acres, instead of the 40 acre Norris Field interest being offered to the investors. Further, the Defendants knew that not all of the 40 acres in the Norris Field were drillable for production, and perhaps only 10 acres could produce.

(c) The Defendants knew the representation of 1,470,000 barrels in place was not based on a study by an independent petroleum engineer or any internal estimates of proven developed and undeveloped reserves.

(d) In July 2005, the Defendants knew that the Norris Field was producing poorly and it was evident that it would not produce 10-15 barrels a day per well as represented.

(e) From July 2005 to November 2005, the Defendants shut down oil and gas production on Norris Field.

## I.
## JURISDICTION AND VENUE

8. This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Exchange Act, 15 U.S.C.A. § 78aa, and 28 U.S.C.A. §§ 1331, and upon principles of supplemental jurisdiction. The claims asserted herein arise pursuant to Sections

10(b) of the Securities Exchange Act of 1934, as amended, 15 U.S.C.A. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5, and the common law of the State of Texas.

9. In connection with the acts, conduct and other wrongs complained of herein, Defendants directly or indirectly used the means and instrumentalities of interstate commerce, including but not limited to the United States mails, interstate telephone communications and the facilities of the national securities exchanges.

10. Venue is proper in the United States District Court for the Southern District of Texas, Houston Division, pursuant to 28 U.S.C. § 1391(a), and Section 27 of the Exchange Act, 15 U.S.C.A. § 78aa, because all or a substantial part of the events or omissions giving rise to the claims occurred within this district and because the Defendants transact business and may be found in this district.

## II.
## THE PARTIES

11. Plaintiff Trendsetter Investors, LLC is a limited liability company organized under the laws of Texas with its principal place of business in Houston, Texas.

12. Defendant Hyperdynamics Corporation is a Delaware corporation doing business in Texas and may be served with process through its registered agent in Texas, Kent Watts, at 4800 Sugar Grove Suite 510, Stafford, Texas 77477.

13. Defendant Trendsetter Production Company is a Mississippi company doing business in Texas, but does not maintain a designated agent for service of process in this state. Therefore, Defendant may be served at it principal office in Texas at 4800 Sugar Grove Suite 510, Stafford, Texas 77477, where it may be served with process by serving its President or Vice President.

14.  Defendant Kent Watts is an individual who resides in Texas and may be served with process at 4800 Sugar Grove Suite 510, Stafford, Texas 77477. Mr. Watts is the Chief Executive Officer, Chairman, and President of Hyperdynamics Corporation. Because of Mr. Watts's position with Hyperdynamics, he had access to the adverse non-public information about Hyperdynamics' and Trendsetter Production's business, financials, present and future business prospects, specifically, the Louisiana properties, via access to internal corporate documents, conversations and connections with other corporate officers, consultants, agents and employees, attendance at management and Board of Directors' meetings and via reports and other information provided to him in connection therewith.

15.  Defendant Michael Watts is an individual who resides in Texas and may be served with process at 4800 Sugar Grove Suite 510, Stafford, Texas 77477. Mr. Watts is the primary consultant of Hyperdynamics with the responsibility to help manage its public relations, general investor relations and shareholder communications. Mr. Watts is also the brother of Kent Watts, the Chief Executive Officer, Chairman, and President of Hyperdynamics Corporation. Because of Mr. Watts's position with Hyperdynamics, he had access to the adverse non-public information about Hyperdynamics' and Trendsetter Production's business, financials, present and future business prospects, specifically, the Louisiana properties, via access to internal corporate documents, conversations and connections with other corporate officers, consultants, agents and employees, attendance at management and Board of Directors' meetings and via reports and other information provided to him in connection therewith.

16.  Defendant Christopher Watts is an individual who resides in Texas and may be served with process at 4800 Sugar Grove Suite 510, Stafford, Texas 77477. Mr. Watts is a consultant of Hyperdynamics with the responsibility to help manage its public relations, general

investor relations and shareholder communications. Mr. Watts is also the son of Kent Watts, the Chief Executive Officer, Chairman, and President of Hyperdynamics Corporation. Because of Mr. Watts's position with Hyperdynamics, he had access to the adverse non-public information about Hyperdynamics' and Trendsetter Production's business, financials, present and future business prospects, specifically, the Louisiana properties, via access to internal corporate documents, conversations and connections with other corporate officers, consultants, agents and employees, attendance at management and Board of Directors' meetings and via reports and other information provided to him in connection therewith.

17. Defendant Harry Briers is an individual who resides in Texas and may be served with process at 4800 Sugar Grove Suite 510, Stafford, Texas 77477. Mr. Briers is the Chief Operating Officer, Executive Vice President and a Director of Hyperdynamics Corporation. Because of Mr. Briers's position with Hyperdynamics, he had access to the adverse non-public information about Hyperdynamics' and Trendsetter Production's business, financials, present and future business prospects, specifically, the Louisiana properties, via access to internal corporate documents, conversations and connections with other corporate officers, consultants, agents and employees, attendance at management and Board of Directors' meetings and via reports and other information provided to him in connection therewith.

### III.
### NO STATUTORY SAFE HARBOR

18. The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the false forward-looking statements pleaded in this Complaint. Many of the forward-looking statements pleaded in ¶¶ 19–31 were not identified as "forward-looking statements" when made. Many of the forward-looking statements did not state that actual results "could differ materially from those projected." Many of the forward-looking

statements did not contain meaningful cautionary statements identifying important factors that could cause actual results to differ materially from that in the forward-looking statements. Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded in ¶¶ 19–31, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made the speaker knew the forward-looking statement was false and the forward-looking statement was authorized and/or approved by an executive officer or director who knew those statements were false when made.

## IV.
## SUBSTANTIVE ALLEGATIONS

19. Defendants repeatedly disseminated false and misleading information regarding the Louisiana properties over the course of a year in order to induce Plaintiff to invest and continue to invest in the properties. Defendants knew that the Louisiana properties would not produce as projected and yet failed to disclose this material adverse information and continued to mislead Plaintiff.

20. In January 2005, Hyperdynamics announced it had "initiated a reserve study" on the Louisiana leases, with initial reported reserves representing over $2.5 million in future gross revenue and a budgeted production rate of 400 barrels per day by June 2005. In March 2005, the Plaintiff and Defendants' met for the first time regarding the working interest investment in Norris Field. Defendants portrayed the investment as a low risk deal. Michael Watts and Harry Briers, both present at the meeting, represented that there were only two risks involved with this offering: the price of oil and the possibility of brief production interruption from time to time. Plaintiff was presented with investment marketing materials which claimed a rate of return of 166% after 8 years. At the meeting, the Company also touted a "reserve report" written by a Mr. Charles Mophett setting out reserves on a 10 acre section of Norris Lease. Michael Watts

indicated that the reserve report did not analyze all producible zones and that the reserve numbers would significantly increase once a more detailed report examining the entire property was performed. Plaintiff requested a copy of the Mophett reserve report at this meeting, but never received one.

21. Hyperdynamics later stated in a March 11, 2005 press release that an "independent and comprehensive geological study" of the Louisiana property had been done estimating a total of 1,470,000 barrels in place. On March 16, 2005, a representative of Plaintiff flew to Louisiana to witness the drilling operations first hand before deciding to invest. Plaintiff was told each well would produce 15 barrels a day and that 14 wells would be completed, online and producing in the next three to four weeks. Relying on the foregoing representations by Defendants, Plaintiff purchased six investment units on April 12, 2005.

22. On April 12, 2005, Harry Briers told Plaintiff for the first time that the Defendants had discovered that there was also a significant amount of natural gas associated with the Norris Lease. Defendants assured Plaintiff that this was a positive development for investors and that production would only be delayed shortly in order to acquire contracts to sell and transport the gas. Relying on the foregoing representations by Defendants, Plaintiff purchased 2 investment units on May 2, 2005 and purchased 2.5 investment units on May 6, 2005.

23. On May 10, 2005, Hyperdynamics issued a press release announcing that 10 wells had been drilled and completed on the investment property, and that substantial high-quality natural gas was discovered on the property. The press release further stated that the company was working with a natural gas pipeline company to start selling gas simultaneously, along with its oil. On the same day, Hyperdynamics released a video on its company website explaining the company's strategy of developing proven areas with a history of production or proven oil. The

video also stated that the Louisiana property had 10 wells online and producing, 1.4 million barrels of oil in place, and an undetermined amount of natural gas. Relying on the foregoing representations by Defendants, Plaintiff purchased 3 investment units on May 10, 2005 and purchased 5 investment units on May 18, 2005.

24. Another Hyperdynamics press release issued on June 3, 2005 stated that 12 wells had been completed on the Louisiana property to date, that all wells had encountered oil and gas, and that all wells will be completed and produced. Kent Watts stated: "We have been encouraged from the report of 1.4 million barrels in place and from finding oil and gas in every well that we have drilled so far in LaSalle Parish. In addition to this, our geologists are updating their previous study and we are expecting at least another four new zones to be added to their study. As a result, we are now upping our program to drill at least 75 wells in this area." A few days later, on July 7, 2005, the Defendants presented Plaintiff with a second marketing brochure which included an updated recoverable reserve total, which now provided natural gas estimates at 1,429,000 MMBtu's. Relying on the foregoing representations by Defendants, Plaintiff purchased 1.5 investment units on July 7, 2005.

25. On July 22, 2005, Michael Watts met with a representative of Plaintiff and requested that Plaintiff purchase several additional units in order to alleviate serious financial problems at Hyperdynamics. Defendants assured Plaintiff during the meeting that the Louisiana properties were performing well and that they had discovered a large amount of natural gas in the Norris Field. Relying on the foregoing representations by Defendants, Plaintiff purchased 3 investment units on July 22, 2005.

26. On July 26, 2005, Plaintiff and Michael Watts had another meeting at which Michael Watts presented a third investment brochure. This brochure included the opportunity to

invest in a second lease referred to as the Kelley Lease. Michael Watts represented that the Kelley Lease already had one great producing well, and that a second one was currently in the works. The new investment brochure nearly doubled the previous return estimates, providing for an internal rate of return of 219% and a percentage of initial investment return of 820% after 12 years. Shortly thereafter on July 28, 2005, Hyperdynamics issued a press release stating that it had received a letter from the USOil Corp. canceling the company's Guinea offshore concession. However, the company maintained that the termination letter was not effective and that it was working diligently to resolve the matter.

27. The next day, July 29, 2005, Hyperdynamics issued a press release stating that the company had completed the 19th well in Louisiana with initial flow rates of 32 barrels a day. Hyperdynamics further stated that 12 wells on the Louisiana properties were awaiting completion of a gas pipeline contract to enable the sale of the properties' natural gas. On July 31, 2005, several members of Trendsetter Investors met with Defendants to discuss the progress of the Louisiana properties and the problems with the Guinea concession. Plaintiff was once again reassured that the Company planned to focus on Louisiana production and had the funds needed to implement the strategy going forward. By August 5, 2005, Hyperdynamics announced it had completed logging its 20th well in Louisiana and that a new additional zone had been confirmed. Relying on the foregoing representations by Defendants, Plaintiff purchased 4.5 investment units on September 6, 2005.

28. On September 16, 2005, Hyperdynamics announced it had signed a contract with BP Energy Co. to sell its natural gas produced on the Louisiana properties and also signed a contract with Tennessee Gas Pipeline to provide pipeline facilities to transport the gas to BP. Hyperdynamics continued to assure investors throughout September and October 2005 that gas

would go online within weeks. On October 10, 2005, Defendants again promised Plaintiff that the natural gas production would be up and running by the end of the week. A few days later, on October 26, 2005, Plaintiffs purchased 2.5 units relying on the foregoing representations by Defendants.

29. Another week came and went without completion of the gas production. Throughout October and November 2005, Defendants continued to feed Plaintiff positive information regarding the commencement of gas production. It was not until December 12, 2005 that Defendants confirmed that there were problems with the gas system. However, Defendants once again promised that steady gas and oil production would be brought online in the next few weeks.

30. This promise, along with all the others before it, never came to fruition. Of course, the Defendants knew this would be the case all along. On November 2, 2005, Hyperdynamics' S-1 filing revealed for the first time that many of the earlier representations made to Plaintiff were false and misleading. The filing stated that the Company did "not have a report from an independent petroleum engineer," nor had they "made any internal estimates of proved developed and undeveloped reserves" regarding the Louisiana properties. These statements are contrary to Defendants' prior representations that an independent reserve study was done which supported an estimate of 1,470,000 barrels in place. Furthermore, Hyperdynamics' January 12, 2006 S-1 revealed that Defendants knew as early as July of 2005 that it would take "some time" to get established to sell natural gas on the Norris Lease, and therefore left the first twelve wells "basically shut-in."

31. The positive statements Defendants made regarding the Louisiana properties from January 2005 to December 2005 were each materially false and misleading when made, and

failed to disclose the following adverse information, disclosure of which was necessary to make the statements not false and misleading, and which adverse facts were then known only to Defendants due to their access to Hyperdynamics and Trendsetter Production internal corporate data:

(a) At the time of the offering, Defendants knew production estimates were false and misleading. Hyperdynamics projected that wells on the property would produce 10-15 barrels a day, while historical production data for the field showed an average of only 1-2 barrels a day.

(b) The Defendants knew that the representation to Plaintiff that there were 1,470,000 barrels in place was false and misleading, as the estimate involved over 200 acres, instead of the 40 acre Norris Field interest being offered to the investors. Further, the Defendants knew that not all of the 40 acres in the Norris Field were drillable for production, and perhaps only 10 acres could produce.

(c) The Defendants knew the representation of 1,470,000 barrels in place was not based on a study by an independent petroleum engineer or any internal estimates of proven developed and undeveloped reserves.

(d) In July 2005, the Norris Field was producing poorly and it was evident that it would not produce 10-15 barrels a day per well as represented.

(e) From July 2005 to November 2005, the Defendants shut down oil and gas production on Norris Field.

## V.
## CAUSES OF ACTION

### COUNT I:
### Section 10(b) of the Exchange Act and Rule 10b-5
### (Fraud or Deceit – Manipulative and Deceptive Device)

32. Plaintiff incorporates by reference ¶¶ 1-31.

33. Each of the Defendants: (a) knew or had access to the material adverse non-public information about the Louisiana properties, which was not disclosed and (b) participated in drafting, reviewing and/or approving the misleading statements, releases, reports and other public representations of or about the Louisiana properties.

34. Defendant, with knowledge of or reckless disregard for the truth, disseminated or approved the false statements specified above, which were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

35. Defendants have violated § 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder in that they: (a) employed devices, schemes and artifices to defraud; (b) made untrue statements of material facts or omitted to state material facts necessary in order to make statements made, in light of the circumstances under which they were made, not misleading; or (c) engaged in acts, practices and a course of business that operated as a fraud or deceit upon the purchasers of the working interest in Louisiana leases.

36. Plaintiff has suffered damage in that, in reliance on the Defendants' statements, it paid artificially inflated prices for the working interest in the Louisiana properties. Plaintiff would have not purchased a working interest in the Louisiana properties if it had been aware that the unit prices had been artificially and falsely inflated by Defendants' false and misleading statements.

## COUNT II:
### Section 20(a) of the Exchange Act
### (Controlling Persons Liability)

37. Plaintiff incorporates by reference ¶¶ 1-36.

38. Kent Watts, Michael Watts and Harry Briers acted as controlling persons of Hyperdynamics and/or Trendsetters Production Co. within the meaning of § 20 of the Exchange Act. By reason of their executive and/or directorial positions at Hyperdynamics and/or Trendsetters Production Co., Kent Watts, Michael Watts and Harry Briers had the power and authority to cause the companies to engage in the wrongful conduct complained of herein.

39. By reason of such wrongful conduct, Kent Watts, Michael Watts and Harry Briers are liable pursuant to § 20(a) of the Exchange Act. As a direct and proximate cause of these Defendants' wrongful conduct, Plaintiff suffered damages in connection with its purchases of the working interests in the Louisiana properties.

## COUNT III:
### Common Law Fraud

40. Plaintiff incorporates by reference ¶¶ 1-39.

41. Each of the Defendants made material false representations to the Plaintiff when the Defendants either (1) knew the representations were false, or (2) made the representations recklessly, as a positive assertion, and without knowledge of their truth.

42. Defendants made the above mentioned representations with the intent that the Plaintiff act on them. Plaintiff relied to its detriment on Defendants' material false representations and suffered damage in that, in reliance on Defendants' statements, it paid artificially inflated prices for the working interests in the Louisiana properties and did not receive the represented return on its investment. Plaintiff would not have purchased working interests in the Louisiana properties if it had been aware that the unit prices had been artificially and falsely

inflated by Defendants' false and misleading statements. Additionally, Plaintiff seeks punitive damages for Defendants' intentional and willful conduct.

## COUNT IV
### Fraud by Nondisclosure

43.   Plaintiff incorporates by reference ¶¶ 1-42.

44.   Each Defendant had a duty to the Plaintiff to disclose facts regarding the Louisiana properties to potential investors, including the Plaintiff. Defendants concealed from or failed to disclose material facts to the Plaintiff when Defendants (1) knew the Plaintiff was ignorant of the facts, and (2) Plaintiff did not have an equal opportunity to discover the facts.

45.   By failing to disclose all material facts regarding the Louisiana properties, Defendants intended to induce Plaintiff to purchase working interests in the Louisiana properties. Plaintiff relied to its detriment on Defendants' material false representations and suffered damage in that, in reliance on Defendants' statements, it paid artificially inflated prices for the working interests in the Louisiana properties and did not receive the represented return on its investment. Plaintiff would have not purchased a working interest in the Louisiana properties if it had been aware that the anticipated production had been artificially and falsely inflated by Defendants' false and misleading statements. Additionally, Plaintiff seeks punitive damages for Defendants' intentional and willful conduct.

## VI.
## BASIS OF ALLEGATIONS

46.   Plaintiff has alleged the foregoing based upon the investigation of its counsel, which included review of Hyperdynamics' SEC filings, press releases, media reports about the company and discussions with consultants, and believes that substantial evidentiary support will exist for the allegations set forth in this complaint after a reasonable opportunity for discovery.

## VII.
## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury.

## VIII.
## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Trendsetter Investors, LLC prays for judgment as follows:

(1) Awarding Plaintiff damages suffered as a result of the wrong complained of herein in, together with appropriate interest;

(2) Awarding Plaintiff its costs and expenses in this litigation, including reasonable attorneys' fees and experts' fees and other costs and disbursements;

(3) Awarding Plaintiff punitive damages; and

(4) Awarding plaintiff such other and further relief as may be just and proper under the circumstances.

Respectfully submitted,

By: _____
Stephen B. Crain
State Bar No. 04994580
Southern District No. 12499

Bracewell & Giuliani LLP
South Tower Pennzoil Place
711 Louisiana, Suite 2300
Houston, Texas 77002-2770
Telephone: (713) 223-2300
Telecopy: (212) 221-1212

ATTORNEY-IN-CHARGE FOR
PLAINTIFF

OF COUNSEL:

BRACEWELL & GIULIANI LLP

Ralph D. McBride
State Bar No. 1332400
Southern District of Texas No. 0818
Bradley J. Benoit
State Bar No. 24012275
Southern District of Texas No. 24495
Diane M. Thompson
State Bar No. 24046966
Southern District of Texas No. 581390

South Tower Pennzoil Place
711 Louisiana Street, Suite 2300
Houston, Texas 77002-2770
Telephone: (713) 223-2300
Telecopy: (713) 221-1212

HOUSTON\1929284.1